ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FT. WORTH DIVISION

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2010 MAR 23  PM 2:47

CLERK OF COURT

| | |
|---|---|
| LORENZO ALLEN THOMAS,<br>                    PLAINTIFF        )<br>And | |
| HEATHER D. SHOUGH,                 )<br>                    PLAINTIFF<br>VS. | **4-10CV-193-Y**<br>CIVIL ACTION NO. |
| TEXAS DEPARTMENT OF FAMILY    )<br>AND PROTECTIVE SERVICES,<br>And Jane/John Does 1-10 | |
| THOMAS CHAPMOND, | |
| CARNESHA COLLINS,                 ) | |
| PAULA PIETZ, | |
| JOYCE COLEMAN, | |
| CRYSTAL MARTIN, TARRANT     ) | |
| COUNTY, TARRANT COUNTY | |
| DISTRICT ATTORNEY OFFICE, | |
| LISA HAINES,                            ) | |
| SAFE HAVEN MISSION | |
| And JANE/ JONE DOE 1-10,     )<br>                    DEFENDANTS' | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE AND JURY OF SAID COURT:

### Parties

1.  Plaintiffs are individuals that are citizens of the United States and residents of the State of Texas.

2.  Defendant, Texas Department of Family and Protective Services, Child Protective Services hereinafter ("TDFPS") or ("CPS"), A Texas State governmental entity, may be served with process by serving its Executive Director, Thomas Chapmond at 701 West 51st Street, Austin, Texas 78751

3.  Defendant, Joyce Coleman-Alford, an individual, may be served with process at 2700 Ben Ave., Fort Worth, Texas 76103.

4.  Defendant, Paula Pietz, an individual, may be served with process at 2700 Ben Ave. Ft. Worth, Tx. 76103.

5.  Defendant, Carnesha Collins, an individual, may be served with process at 2700 Ben Ave. Ft. Worth, Texas 76103.

6.  Defendant Crystal Martin, an individual, may be served with process at 1200 E. Copeland, Arlington, Texas 76011.

7.   Defendant Lisa Hains, an individual, may be served with process at 2700 Ben Ave., Ft. Worth, Texas 76103.

8.   Defendant Joe Shannon Jr., an individual, may be served with process at 2700 Ben Ave., Ft. Worth, Texas 76103.

9.   Defendant, Tarrant County, a county governmental entity in the State of Texas, may be served with process by serving 100 E. Weatherford Ft. Worth, Texas.

10.  Defendant, Tarrant county District Attorneys office, a county governmental District Attorney, may be served with process at 401 W. Belknap, Ft. Worth, Texas 76196

11.  Defendant, Safe Haven Mission, is a non-for-profit corporation that is incorporated under the laws of the State of Texas. Defendant has its principal place of business in the State of Texas. Defendant may be served with process by serving its registered agent, 6815 Manhattan Blvd.

## Capacity

12. Plaintiff's sue Program director, Joyce Coleman-Alford in her official and individual capacities.

13. At the time of the occurrences at issue in this suit, Defendants Collins, Martin, Chapmond, Coleman-Alford, Pietz and Jane/John Does 1-10 were officers of TDFPS and were acting in such capacity as agents, servants, and employees of TDFPS and were acting under the direction and control of TDFPS, and were acting pursuant to either official policy, or custom, practice, or usage of TDFPS.

14. Defendant CPS is a department of the State of Texas organized and existing under the laws of the State of Texas. In this cause, CPS acted through it agents, employees and servants, who were the policy makers for CPS and for the conduct of the persons employed by CPS and through Defendants Collins, Martin, Coleman-Alford, Pietz, Chapmond, Jane/John Does 1-10, and Safe Haven Mission.

15. Plaintiffs' sue Defendants Carnesha Collins, Paula Pietz, Joyce Coleman-Alford, Crystal Martin and Jane/John Doe 1-20 each in their individual and official capacities.

16. At all times referred to herein, Defendants Carnesha
    Collins, Crystal Martin, Paula Pietz, Joyce Coleman-
    Alford and Jane/John Doe 1-20 acted under color of
    the laws, statutes, ordinances, regulations,
    policies, customs, and usages of the State of Texas
    and or Tarrant County, Defendants Carnesha Collins,
    Crystal Martin, Paula Pietz, Joyce Coleman-Alford
    and Jane/Jone Doe 1-20 and pursuant to their
    authority as of said CPS.

17. At the time of the occurrences at issue in this
    suit, Defendant Joe Shannon, Jr., Lisa Haines, were
    officers of the Tarrant County Attorney's office and
    were acting in such capacity as agents, servants,
    and employees of Tarrant County and it District
    Attorney's Office, and were acting under the
    direction and control of Tarrant County and its
    District Attorney's office and were acting pursuant
    to either official policy, or the custom, practice,
    and usage of Tarrant County, State of Texas and or
    its District Attorney's office.

18. Defendant Tarrant County is a municipal corporation
    organized and existing under the laws of the State
    of Texas. In this cause, Tarrant County acted
    through its agents, employees, and servants, who

were the policymakers for Tarrant County District
Attorney's office and for the conduct of the
officers employed by the department, and through
Defendants Joe Shannon, Lisa Haines.

19.  Plaintiffs sue Defendant Joe Shannon, Lisa Haines,
each in their individual and official capacities.

20.  At all time referred to herein, Defendants Joe
Shannon, Lisa Haines, acted under color of the laws,
statutes, ordinances, regulations, policies,
customs, and usages of the State of Texas, Tarrant
County and Tarrant County District Attorney's office
and pursuant to their authority as officers of said
Tarrant County and Tarrant County District
Attorney's office.

### JURISDICTION

21.  This court has jurisdiction to hear and determine
this action based upon violations of the Fourth and
Fourteenth Amendments to the United states
Constitution, federal civil rights law pursuant to
42 U.S.C. § § 1983 and 1988, federal statutes, and
Texas statutory and/or common law. The court has
jurisdiction of this action under 42 U.S.C. § 1983,
28 U.S.C. § 1343 and 28 U.S.C. § 1331.

## CONDITIONS PRECEDENT

22. All conditions precedent has been performed or has occurred.

## FACTS

23. This is an action for money damages and for prospective relief against the Defendants named above, for violations of the Fourth and Fourteenth Amendments to the United States Constitution, federal civil rights law pursuant to 42 U.S.C. § § 1983 and 1988, the Texas Constitution, and Texas statutory and/or common law.

24. Plaintiffs LORENZO THOMAS ("Mr. Thomas") and HEATHER SHOUGH ("Ms. Shough"), at the time of these issues had one child, MARQUIA THOMAS.

25. On or about June 15, 2009, Plaintiffs had at verbal argument at their home. Mr. Thomas was tired and explained to Ms. Shough that it was late and that they should discuss the matter in the morning. However, Ms. Shough was persistent and wanted to

resolve the argument before they went to bed.
Therefore, because their daughter slept in the same
room as them, Mr. Thomas asks their roommate if she
didn't mind watching their daughter while they were
arguing.

26. Mr. Thomas left the house, so that Ms. Shough and
him could calm down before the argument escalated.
Ms. Shough followed Mr. Thomas down the street. Mr.
Thomas didn't want to cause a scene so he began
walking back to the house. At that point, Ms.
Shough, stopped a car driving by and got in the car
and left. The next morning, Ms Shough had came home
and wanted to talk to Mr. Thomas about the argument
but Mr. Thomas didn't want to talk because he was up
set about Ms. Shough getting into a car with
strangers and leaving. Ms. Shough left the room and
left the house.

27. Mr. Thomas noticed that Ms. Shough had left the
house taking their daughter with her. On or about
June 18, 2009, Mr. Thomas received a call from Ms.
Shough stating that she had went to a shelter that
she couldn't let him know where she was or that they
would make her leave the shelter. Ms. Shough
explained that she wanted to come home but the

shelter stated that if she left that Ms. Shough

wasn't allowed to leave with their daughter. When

asked why, Ms. Shough explained that she had lied

and told the counselors at the shelter that Mr.

Thomas had choked her and that she was a victim to

domestic violence. Ms. Shough stated that she only

said those things because she was mad at Mr. Thomas

and that she wanted Mr. Thomas to stop smoking weed.

Ms Shough also stated that CPS was called and she

was told by Defendant Collins that Mr. Thomas was

not allowed to live at the home and if CPS found out

that he was in fact making contact with Ms. Shough,

CPS would remove their child from the home.

28.   Ms. Shough informed Mr. Thomas that she was calling

a friend to take her home that she was leaving the

shelter and that he had to go stay with a friend.

Mr. Thomas agreed and left the home. On or about

June 23' 2009, Ms. Shough received a knock on the

door and discovered that it was Defendant Collins

from CPS. Ms. Opened the door and Defendant Collins

walked in the house uninvited and sit down

questioning Ms. Shough about why she had left the

shelter. She had also questioned Ms. Shough about

any drug use or having contact with Mr. Thomas. Ms.

Shough admitted that she had in fact used marijuana back on the 19th of June but had used since then. Ms. Shough denied having any contact with Mr. Thomas other than Mr. Thomas coming to the home to get some of his personal items and clothes but she didn't let him in the home and told him that he had to leave once she brought his things to him. Defendant Collins.

29.  Based on the information concerning the drug use Ms. Collins drafted a safety plan instructing Ms. Shough not to use any illegal drugs and not to have any further contact with Mr. Thomas, if so, that CPS would remove their child from the home.

30.  On June 23, 2009, after speaking to defendant Collins, Ms. Shough took her daughter to her pediatrician for a physical. At the pediatricians office, a physical was performed and their was clear with a healthy report.

31.  On June 25, 2009, Ms. Shough states that she was awaking by someone beating on the door. When she came to the door, Ms. Collins and three other ladies walked in the home without asking or Ms. Shough providing consent, and began demanding that MS. Shough pack her things that CPS was shipping her

back to Ohio to live with her parents. Ms. Shough
refused and was told by Ms. Collins that CPS would
take custody of the child if MS. Shough refused. At
that point Ms. Shough agreed to move as long as she
was allowed to take her daughter with her. Ms.
Shough called her mother and explained what was
going on and ask if someone would be there to pick
Ms. Shough up at the airport.

32.   Ms. Shough hung up the phone and Defendant Collins
stated that Ms. Shough had just told her mother that
she had contact with Mr. Thomas. Ms. Shough
strenuously denied making such comment. Defendant
Collins then ask Ms. Shough to submit to a drug
test. Ms. Shough argued that she had already
explained that she did in fact smoke marijuana on
the 19th of June and that there was no way that her
system was clean yet. Defendant Collins responded,
"Oh that's ok, just take the test any way. I told
you I'm not going to set you up".

33.   Ms. Shough agreed to take the drug test. While
taking the test, Ms. Shough was holding her daughter
and Defendant Collins and the other 3 ladies whose
names are unknown, keep asking to hold her daughter.
Ms. Shough refused at first but her daughter was

becoming restless from being held so Ms. Shough sat her daughter down to write a statement. At that point one of the unknown ladies grabbed Ms. Shough's daughter and ran out the door. Defendant Collins left with them throwing a paper in Ms. Shough face and stated, "NOW YOU CAN BE WITH LORENZO ALL YOU WANT." The paper was a Notice of Removel of Child.

34. Ms. Shough asserts that she ran out side pleading with Ms. Collins not to take her child from her, however, Ms. Collins responded for Ms. Shough to go back into the house and not to cause a scene. After the removal, Ms. Shough came to Mr. Thomas job and explained to him what had took place. Ms. Shough explained that CPS and 3 ladies who didn't identify their selves, came into the house without asking and grabbed their daughter. Ms. Shough explained that Defendant Collins wanted Mr. Thomas to contact her for questioning.

35. Mr. Thomas asserts that he made several attempts to contact defendant Collins however she would not answer her phone even and would not return Mr. Thomas call, although he left a message to return his call.

36.   On or about June 26, 2009, Mr. Thomas and Ms. Shough
      went to court concerning a hearing for the removal.
      Before the heaing Ms. Shough and Mr. Thomas spoke to
      the assistant district attorney Haines and explained
      that their actions were illegal and that they had no
      right to come into their home without a warrant or
      court order. Ms. Collins was present at the time,
      and argued that CPS did infact have the right to
      remove the child but there was exceptional
      circumstances present that warranted the removal.
      Ms. Shough argued that the allegations were not true
      and that she had lied about domestic violence
      because she was upset. In response, Ms. Haines and
      Collins threaten MS. Shough that if she didn't stick
      with her original story that CPS would hold the case
      up for a year and Ms. Shough would see her child.

37.   At the hearing both Ms. Shough and Mr. Thomas was
      appointed counsel and an order was enter for their
      child to remain in CPS custody. After the hearing
      both parents were provided a copy of the petition
      alleging the allegations concerning reason for
      removal. At that point is when Mr. Thomas and Ms.
      Shough learned of the fabricated allegation
      submitted by Defendant Collins.

38.  In the petition, along with the affidavit signed by
     Defendant Collins, Ms. Collins fabricated
     allegations that Ms. Shough had alleged to her that
     Mr. Thomas had abused their daughter by picking
     their daughter up by her limbs and throwing her into
     her play pin for crying, which was a lie. Ms.
     Collins also alleged that Ms. Shough alleged that
     Mr. Thomas had grabbed their daughter by the neck
     but dint squeeze, which was also a lie. In the
     petition, the state and CPS falsely alleged that
     their child had been sexually assaulted. None of
     their allegation were submitted in the "Notice for
     Removal of Child", when asked to state the factual
     allegation for reasons for removal.

39.  Ms. Shough and Mr. Thomas were ordered to return to
     court on July 2, 2009 to appear for a Show Cause
     Hearing and dispute the allegations. Both parents
     made several attempts to contact their attorney to
     prepare for the hearing. Ms. Was able to ever speak
     to her lawyer prior to the hearing and Mr. Thomas
     spoke to his lawyer a day before the hearing. After
     explaining the facts to his attorney and informing
     his attorney that CPS had came into the home without
     consent and removed the child without a court order

a warrant, his attorney suggested that Mr. Thomas
and Ms. Shough just go along with what CPS was
saying, that, that Ms. Shough and Mr. Thomas had a
better chance for their child being returned faster
in they didn't fight. Mr. Thomas attorney stated
that CPS would have them do a few classes and that
their child would be returned within 90 days. Mr.
Thomas agreed to waive his rights to appear at the
hearing in return that it was noted that Mr. Thomas
was not admitting to any domestic violence or child
abuse because the allegation weren't true.

40. After the hearing both parents were assigned a
caseworker; Crystal Martin, and were given a service
plan to complete before their child would be
retuned. Mr. Thomas received a copy of the order
from the show cause hearing which stated that no
findings of fact were found at the time, but Mr.
Thomas also learned that he was ordered to complete
domestic violence and other services that he felt
that he was admitting to abuse. Mr. Thomas contacted
his lawyer, demanding that he file an appeal
concerning the refusal to appear at the show cause
hearing, and his response was that it was too late

and for Mr. Thomas to complete the services. Ms.
Shough had never spoken to her lawyer before that.

41. Mr. Thomas asserts that after speaking to his
lawyer, he was up set and felt that his lawyer had
not provided him with effective assistance of
counsel; based on the facts that his lawyer was made
aware of and failing to do an independent
investigation, Mr. Thomas ask the court at a status
review hearing that his lawyer be removed from the
case and Mr. Thomas be assigned new counsel, however
he was denied.

42. After the status review hearing, both Ms. Shough and
Mr. Thomas spoke to their case worker Ms. Crystal
Martin. Mr. Thomas stressed his concerns that CPS
removed their child wrongfully and that the matter
needed to be investigated. However, Ms. Martin
responded that Mr. Thomas shouldn't cry over spilled
milk, that he should complete the services requested
and that his child would be returned to him.

43. Ms. Shough began starting her services; however Mr.
Thomas still refused to take the services that dealt
with any sort of abuse. However, Mr. Thomas did
start taking parenting classes as ordered by CPS.
During the three months that Thomas child was in CPS

custody, both parents were living together and
hadn't heard anything concerning the case from their
caseworker Ms. Martin.

44. However, in October 2009, Mr. Thomas began calling
CPS asking question about the investigation and
requesting documents concerning the case and asking
that investigator Collins be investigated concerning
the fact that she entered into Mr. Thomas and Ms.
Shough home without consent and the fact that she
removed the child without a court order, warrant, or
exigent circumstances. Mr. Thomas was denied any
copies of the records concerning the case on grounds
that they were confidential.

45. On or about October 12, 2009, began calling
questioning Mr. Thomas and Ms. Shough as to when the
new child Natalie Thomas was to be born and what
hospital that she was to be born at. On or abour 24,
2009, Ms. Shough had her new daughter. On October
30, 2009 Mr. Thomas and Ms. Shough went to CPS to
have their visit with their daughter Marquia Thomas
who was in foster care. Crystal Martin was at the
visit and Mr. Thomas began asking Ms. Martin to
provide names of individuals that have had
involvement in the case and for copies of documents

that had already been provided. Ms. Martin began
question Mr. Thomas as to why he needed the
document, that if he needed the documents for a
lawyer or for him self. Mr. Thomas informed Ms.
Martin that he needed the documents to prepare a
lawsuit against CPS for wrongfully removing his
child and not investigating the allegation to
determine whether they were in fact true.

46. After learning that Mr. Thomas was going to claiming
he was filing a civil suit against CPS, Ms. Martin
left the room and returned with two drug test and
requested that, Ms. Shough and Mr. Thomas submit to
a drug test. Both parents agreed, and tested
negative and the visit was needed and Mr. Thomas and
Ms. Shough left.

47. On or November 2, 2009 Ms. Shough received a knock
on the door. When she opened the door, there was a
Kennedale police officer and a CPS worker by the
name of Ms. Jackson. Ms. Jackson informed Ms. Shough
that it had been reported by CPS on October 31, 2009
that Ms. Shough had failed to report the birth of
her daughter and that Mr. Thomas was living at the
home. In response, Ms. Shough informed the
investigator that Mr. Thomas was not living at the

home at the time for the fact that he had been
arrested and was in jail. Ms. Jackson searched the
home and unclothed Ms. Shough new born Natalie
Thomas and took pictures of the child. Ms. Jackson
informed Ms. Shough that had Mr. Thomas would have
been at the house that the daughter Natalie Thomas
would have been taking into CPS custody; although no
one had told MS. Shough that Mr. Thomas wasn't
allowed to live at the home with Ms. Shough and the
new born, and Crystal Martin new that both parents
had been living together since the removal of their
daughter Marquia.

48. Ms. Jackson left the home informing Ms. Shough that
upon Mr. Thomas release from jail that she was to
report his release to CPS.

49. Because of Mr. Thomas confinement in jail and the
fact that she had no income, she was unable to
afford the rent where she was staying so she moved
in with Mr. Thomas parents. On or about December 12,
2009, Ms. Martin contacted Mr. Thomas mother and
informed her that Mr. Thomas had been released from
jail. On or about January 10, 2010, CPS is sent to
Mr. Thomas home were Ms. Shough was staying. CPS
investigator Victor James explained that he was

called out to follow up on the allegations that were
reported by CPS October 31, 2009. Mr. James alleged
that the allegations were neglectful supervision of
Natalie Thomas, and physical abuse by both parents.
Because Mr. Thomas wasn't allowed to live with Ms.
Shough at the time, Mr. James was unable to question
Mr. Thomas. Mr. James left the home without removing
the child.

50.  Ms. Shouge asserts that on or about December 3,
2010; during a Permanency, Ms. Martin falsely
informed the court that she had contacted Mr. Thomas
and Ms. Shough on 3 occasions requesting that they
submit to a drug test and that both parents failed
to submit to the drug test. Ms. Shough argued with
her attorney that these allegations by Ms. Martin
were false that had Mr. Thomas are Ms. Shough
refused, there would be a automatic positive result
on file. Ms. Shough also claimed that it was
impossiable for Ms. Martin to contact Mr. Thomas for
the fact that Ms. Shough and Mr. Thomas only had one
phone that Ms. Shough keep daily while Mr. Thomas
worked from 4 a.m. to 5 p.m.

51.  On or about February 10, 2010, Mr. Thomas and Ms.
Shough received a letter from Mr. James informing

them that based on the allegations reported on
October 31, 2009; CPS had determined to rule the
allegations of abuse/neglect out for lack of
evidence and determined to close the case.

52. October 24, 2010, Mr. Thomas ran into Ms. Martin at
the Justice of the Peace courthouse because he was
droping off some documents for his step-father. Mr.
Thomas spoke to Ms. Martin and he left. On or about
March 4, 2010, Ms. Shough received a home visit from
Ms. Martin and another CPS caseworker who failed to
identify herself. During the home visit, Ms. Martin
question Ms. Shough about the car that was in
driveway of her home; claiming that Ms. Martin had
seen Mr. Thomas in the same car leaving the
courthouse. Ms. Shough responded that the car that
she had seen Mr. Thomas in wasn't his car; rather it
belonged to Mr. Thomas step-brother; who confirmed
that it was in fact his car during the home visit.

53. On or about March 5, 2010, during a visit with Ms.
Shough daughter Marquia at CPS, Ms. Shough receives
a call from her mother-in-law, which a CPS
investigator; Kristy Fewin, had just left the home
asking questions about Mr. Thomas and Ms. Shough
riding together in a car, and whether Mr. Thomas had

been around Ms. Shough. Ms. Shough mother-in-law
informed Ms. Shough that she explained to the
investigator that Mr. Thomas had not been around Ms.
Shough or her home and that the car that Mr. Thomas
had been seen in, wasn't his that it was his step-
brothers. Ms. Shough tried to contact the
investigator but received a voicemail. On or about
March 10, 2010, Ms. Shough received a call from Ms.
Fewin stating that she needed to speak with Ms.
Shough at her home and that she needed to have her
daughter Natalie with her. Ms. Shough ask about the
nature of the visit, in response Ms. Fewin responded
that there were allegations of neglectful
supervision towards Natalie and that they would
discuss more at the interview.

54. On or about March 12, 2010, Cps agent Ms. Fewin,
shows up at Ms. Shough home for a interview
concerning the allegations made by Ms. Martin
stating that Lorenzo Thomas was living at the home
with Ms. Shough. Ms. Shough denied the allegation
and Ms. Fewin completed the interview and left.

55. Mr. Thomas and Ms. Shough asserts that the 9 months
that CPS has had custody of their child, Ms. Martin
had only done one home visit. However, Ms. Martin

has sent CPS to Ms. Shough home with false
allegations of abuse. Ms. Shough asserts that CPS
has been unable to find evidence of abuse, domestic
violence and has made every attempt to collect
evidence after the fact as grounds to justify the
initial reason for removal their child from the home
on June 25, 2009. Ms. Martin and CPS have tried to
use allegations of failure to complete their service
plan and violations of CPS request that Ms. Shough
have no contact with Mr. Thomas as grounds to
terminate rights, rather than proven or showing that
there were grounds to remove the child without a
warrant or court order.


## Count# 1-Unlawful Retaliation Cognizable

## Under 42 U.S.C.§ 1983

56. Plaintiffs incorporate by reference paragraphs 23-
    102 as though fully set forth at length herein.

57. The conduct of Defendants Collins, Martin, and
    Haines, and Jane/John does 1-10 acting individually
    and in conspiracy, as set forth above, was a direct
    result of their personal animus toward Plaintiff

Lorenzo Thomas and/or as retaliation for Mr. Thomas'
refusal to ignore serious problems with how CPS
removed the child from the home and his obvious
intention to file a petition seeking an
administrative hearing regarding same. Also Mr.
Thomas' obvious intention to file a civil suit
against CPS for unlawful removal of child without a
warrant or court order and other claims. The day
after the confrontational June 26, 2009 hearing,
Defendants conspired to report Plaintiff Lorenzo
Thomas for child abuse, uncooperative. In the
report, Defendants lied about the facts and
misrepresented critical matters. The day after the
confrontational visit with Ms. Martin, Defendant
conspired to also report untrue allegations on
several occasions. During hearings at court and
calling other CPS office making false allegations
against Ms. Shough and Mr. Thomas. Defendant lied
about allegations of child neglect and physical
abuse. As such, Defendants' actions were unlawful
and malicious attempt, under color of law, to
harass, intimidate, and punish Plaintiffs. The fact
that the entire process was attempted several times
4 months later with another child of Ms. Shough and

Mr. Thomas is further evidence of Defendants' abuse
of Plaintiffs' procedural and substantive due
process rights under color of law.

58.   The acts of Defendants as set forth above were
intentional, wanton, malicious, and oppressive, thus
entitling Plaintiffs to an award of punitive damages
against said Defendants in their individual
capacities.

59.   If Plaintiffs prevail, they are entitled to an award
of attorneys' fees and costs pursuant to 42 U.S.C §
1988.

## Count # 2- Unlawful Search and seizure Without Probable Cause by CPS Agents

60.   Plaintiffs incorporate by reference paragraphs 23-
102 as though fully set forth at length herein.

61.   Defendants Carnesha Collins, Safe Haven Mission,
Crystal Martin and Jane Doe 1-3 acted unreasonably
and in reckless disregard for the truth in failing
to seek or secure a proper warrant or order, and in
failing to take any steps to confirm the validity of

the information provided them by Plaintiff Shough when they had reason to doubt the validity of such information, based on their own files and the interrogation of Plaintiff Shough by Safe Haven Mission and CPS. They also deliberately failed to examine any of the available exculpatory evidence provided by Plaintiff Shogh before CPS removed Marquia form the home. Defendants' as working as CPS agents, intentionally fabricated evidence in order to obtain a court order to detain Plaintiffs child on June 25, 2009. Defendants maliciously failed to provide the court with exculpatory information, and filed false report in furtherance of the effort to keep Plaintiffs separated from their child.

62. As a result of defendants' acts as described above, defendants deprived Plaintiffs of their right to be free from unlawful searches and seizures, in violation of the Fourteen Amendment to the Constitution of the United States.

63. As a direct and proximate result of the defendants' actions as described above, Plaintiffs suffered damages and will suffer additional damages in the future in an amount that cannot yet be determined.

64. The acts of Defendants as set forth above were intentional, wanton, malicious, and oppressive, the entitling Plaintiffs to an award of punitive damages against said Defendants in their individual capacities.

65. If Plaintiffs prevail, they are entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

66. Prior to the incidents at issue in this case, Thomas Chapmond, Paula Pietz, Joyce Coleman-Alford knew of previous incidents involving Defendants other CPS agents, wherein those CPS agents acted unreasonably and in reckless disregard for the truth in failing to seek or secure a proper warrant or order, and in failing to take any steps to confirm the validity of information provided them by a informant when they had reason to doubt the validity of such information. Chapmond and Joyce Coleman-Alford took no action to discipline Defendants or other CPS agents, or to order them not to repeat such incidents, thus tacitly authorizing such conduct. If Chapmond or Coleman-Alford had taken such remedial action, the unlawful procedures would not have occurred.

67.  CPS is vested by state law with the authority to
     make policy on the practice of child abuse
     investigations. CPS was aware of a pattern of
     unlawful investigations and seizure of children
     without due process, when due process was available,
     by workers employed by CPS; they were aware that the
     policies regarding the discipline of workers accused
     of such practices was so inadequate that it was
     obvious that a failure to correct them would result
     in further incidents of unlawful searches; and the
     failure to correct said policies caused the unlawful
     procedures to be forced upon Plaintiffs as set forth
     above. The allegations in this paragraph are likely
     to have evidentiary support after a reasonable
     opportunity for the further investigation or
     discovery.

68.  At all time relevant to this complaint, Defendants,
     as CPS employees, were acting under direction and
     control of Thomas Chapmond and Coleman-Alford and of
     CPS, and were acting pursuant to the official
     policy, practice, or custom of CPS.

69.  Acting under color of law and pursuant to official
     policy, practice, or custom, Thomas Chapmond and
     Coleman-Alford, Paula Pietz and Cps intentionally,

knowingly, and recklessly failed to instruct, supervise, control and discipline, on a continuing basis, Defendants in their duties to refrain from unlawfully and maliciously conducting an illegal search and seizure against Plaintiffs.

70. Thomas Chapmond, Coleman-Alford, Paula Pietz and CPS had knowledge, or had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs which were done, as heretofore alleged were about to be committer. Coleman-Alford, Pietz and CPs had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and intentionally, knowingly or recklessly failed or refused to do so. The allegations in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

71. CPS directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants as set forth above.

72. As a direct and proximate result of the acts or omissions of Thomas Chapmond, Coleman-Alford, Pietz and CPs as set forth herein, Plaintiffs suffered mental anguish in connection with the deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and pursuant by 42 U.S.C. § 1983.

73. The acts of Chapmond, Coleman-Alford and Pietz as set forth above, were intentional, wanton, malicious, and oppressive, thus entitling Plaintiffs to an award of punitive damages against said defendants in their individual capacity.

### Count # 3- Interference with Family Relationships

74. Plaintiffs incorporate by reference paragraphs 23-102 as though fully set forth at length herein.

75. As a direct and proximate result of unlawful, deliberately indifferent, and malicious acts of Defendants Collins, Martin and Jane Doe 1-3, as set forth above, and as a direct and proximate result of established policies and customs of CPS and Tarrant County as set forth above, Plaintiffs were deprived of their right to the services, consortium, companionship, comfort, and support of their

children/parents/siblings without due process of
law, in violation of their rights under the
Fourteenth Amendment to the United States
Constitution to live together as a family.

76.   If the Plaintiffs prevail, they are entitled to an
award of attorneys' fees and costs pursuant to 42
U.S.C. § 1988.

## Count # 4- Removing Child from Parental Custody Without Hearing

77.   Plaintiffs incorporate by reference paragraphs 23-
102 as though fully set forth at length herein.

78.   As a direct and proximate result of the unlawful,
deliberately indifferent, and malicious acts and
omissions of Defendants CPS, Chapmond, Coleman-
Alford, Collins, Martin, Safe Haven Mission, Jane
Doe 1-10, Tarrant County, Plaintiff Lorenzo Thomas
and Heather Shough were deprived of their liberty
without due process of law in contravention of the
Fourteenth Amendment of the United States
Constitution as a result of the failure of the
Defendants to afford Plaintiffs a hearing regarding
the decision to remove Plaintiffs child from
Plaintiffs custody.

79.   If Plaintiffs prevail, they are entitled to an award
      of attorneys' fees and costs pursuant to 42 U.S.C. §
      1988.

## Count # 5- Intentional Infliction of Emotional Distress

80.   Plaintiffs incorporate by reference paragraphs 23-
      102 as though full set forth at length herein.

81.   The conduct of Defendants CPS, Chapmond, Coleman-
      Alford, Collins, Jane Doe 1-10, Martin, Tarrant
      County, Haines, Shannon, and the Tarrant County
      District Attorney's office was extreme and
      outrageous in character, and so extreme in degree,
      as to go beyond all possible bounds of decency, as
      to be regarded as atrocious an intolerable in a
      civilized community. In particular, the conduct was
      outrageous because Defendants, despite possessing no
      evidence to support allegations of child abuse or
      neglect, and despite possessing evidence to refute
      allegations of child abuse, neglect, or domestic
      violence, nonetheless forcibly removed Plaintiffs
      child from their home and continued to detain their
      child when there was no need to do so, and attempted
      through legal action to terminate Plaintiffs

parental rights to their child. The Plaintiffs child
was subjected to extreme fear and anxiety.

82.  The Defendants' conduct proximately caused
Plaintiffs damage in that it caused Plaintiffs to
suffer severe emotional distress. In particular, the
proximate cause of severe disappointment,
indignation, wounded pride, shame, despair, and
public humiliation in that Plaintiffs were deprived
of their child, threaten with permanent loss of
their child, and falsely portrayed as perpetrators
of child abuse/neglect to the community. Defendants
have made Plaintiffs the object of gossip and rumor
in the community at large.

83.  In addition to the emotional distress, Plaintiffs
have suffered and will continue to suffer additional
damages as approximate result of the Defendants'
conduct in that in all reasonable probability,
Plaintiffs will continue to suffer this mental pain
and anguish for a long time into the future.
Plaintiffs have also incurred damages in the form of
attorney's fees to defend against Defendants'
conduct and to try to clear their name.

84.  Defendants' conduct as set forth above was malicious
and fraudulent so as to entitle Plaintiffs to

recover exemplary damages. In this connection,
Plaintiffs will show that as a result of Defendants'
conduct, Plaintiffs have suffered losses of time and
expenses, including attorney's fees incurred in the
investigation and prosecution of this action.
Accordingly, Plaintiffs ask that exemplary damages
be awarded against the Defendants in a sum within
jurisdictional limits of this Court.

## Count # 6- Invasion of Privacy (Intrusion on Seclusion) and § 1983 Violation of Zone of Privacy Protected by the United State Constitution Committed by Governmental Agent

85.   Plaintiffs incorporate by reference paragraphs 23-
      102 as though fully set forth at length herein.

86.   As a direct result and proximate result of
      Defendants' CPS, Chapmond, Coleman-Alford, Pietz,
      Collins, Martin, Jane Doe 1-10, Haines Shannon,
      Tarrant County, unjustified and unlawful invasion of
      Plaintiffs privacy, Plaintiffs suffered loss of
      privacy as well as the private use of their
      residence. Furthermore, Plaintiffs have suffered
      humiliation, embarrassment, fear, frustration, and
      general mental anguish, and in all reasonable

likelihood they will continue to do so for a long time in the future.

87.  Plaintiffs have suffered actual losses and actual damages as a direct and proximate result of Defendants' cruel and wrongful invasion of their privacy described above in a sum within jurisdictional limits of the Court and for which Plaintiffs sue.

88.  Defendants' conduct constituted a fraudulent and malicious violation of Plaintiffs right to privacy. Plaintiffs, therefore, are entitled to recover exemplary damages. Accordingly, Plaintiffs sue for exemplary damages in a sum within the jurisdictional limits of this Court.

89.  If the Plaintiffs are prevail, they are entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## Count # 7- Abuse of Civil Process Under 42 U.S.C. §1983

90.  Plaintiffs incorporate by reference paragraphs 23-102 as though fully set forth at length herein.

91.   Defendants Carnesha Collins, Crystal Martin, Paula
      Pietz, Joyce Coleman-Alford, and Jane/or John Doe 1-
      10, acting individually or together and in
      conspiracy, caused the civil charges against
      Plaintiffs as set forth above to issue against
      Plaintiffs and assisted in the prosecution of said
      charges.

92.   Defendants were motivated in the pursuit of civil
      charges against Plaintiffs not by belief that the
      charges had any factual or legal merit or that
      probable cause for their issuance existed, but for
      improper, illegal and unconstitutional purposes, to
      wit:

             a. Defendants sought to protect themselves
                from civil and/or criminal liability for
                the unlawful treatment of Plaintiffs as
                set forth above, by charging Plaintiff
                with causes of action which, if proven,
                would arguably have demonstrated the
                justification for the treatment of
                Plaintiffs and/or;

             b.  Defendants sought to collect monies from
                Texas State and/or federal agencies in
                relation to the taking of Plaintiffs

child, placing said child in foster care;
and/or

c. Defendants strongly resented the fact
that Mr. Thomas and Ms. Shough stood up
to them; and/or

d. Defendants were consumed with their own
power agenda; and/or

e. Defendants sought to hide and/or justify
the systemic and destruction of crucial
evidence and hide exculpatory evidence;
and/or

f. Defendants sought to use trickery,
fabricate allegations to protect
themselves from civil and/or criminal
liability and to justify the unlawful
treatment of Plaintiffs.

93. Defendants falsified and/or fabricated their
official reports and offered perjured testimony at
hearings of causes of action against Plaintiffs in
an attempt to secure rulings against Plaintiffs.
Defendants routinely disregarded statutory
requirements for gathering evidence.

Defendants continued to detain Plaintiffs
child after learning Defendants had no basis to do

so. Defendants' intentionally fabricated evidence in order to obtain a court order to continue to detain Plaintiffs child on June 25, 2009. Defendants' maliciously failed to provide the court with exculpatory information, and file false reports in furtherance of the effort to keep Plaintiffs separated from their child.

94.  The conduct of Defendants as set forth above clearly violated Plaintiffs fundamental right to be free of unreasonable and unlawful seizure secured by the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

95.  The acts of Defendants as set forth above were intentional, wanton, malicious, and oppressive, thus entitling Plaintiffs to an award of punitive damages against said Defendants in their individual capacities.

96.  If Plaintiffs prevail, they are entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**Count # 8- Conspiracy**

97.  Plaintiffs incorporate by reference paragraphs 23- 102 as though fully set forth at length herein.

98. Defendants Chapmond, Carnesha Collins, Paula Pietz, Joyce Coleman-Alford, Crystal Martin, Joe Shannon, Jr., Lisa Haines, Safe Haven, and Jane/John Does 1-10, acting in their individual and official capacities and under color of law, having conspired together and with others, reached a mutual understanding and acted to undertake a course of conduct that violated Plaintiffs' civil rights, to wit:

  a. Defendants Chapmond, Carnesha Collins, Paula Pietz, Joyce Coleman-Alford, Crystal Martin, Joe Shannon, Jr., Lisa Haines, Safe Haven, and Jane/John Does 1-10 agreed and acted intentionally to forcibly remove a child from their home without any probable cause, warrants, orders, or other due process of law. This was an unreasonable search and seizure and improper deprivation of liberty.

  b. Defendants Chapmond, Carnesha Collins, Paula Pietz, Joyce Coleman-Alford, Crystal Martin, Joe Shannon, Jr., Lisa Haines, Safe Haven, and Jane/John Does 1-10, agreed and acted intentionally to file a petition to prevent Plaintiffs Lorenzo Thomas and Heather Shough from

getting their child returned after they were
snatched by CPS. No reasonable basis in fact
existed for this extraordinary action, or the 10
months of litigation that followed as Defendants
CPS and Tarrant County District Attorney's office
tried to terminate Mr. Thomas and Ms. Shough
parental rights to their child.

c. Defendants Chapmond, Martin, Haines, Pietz, and
Jane/John does 1-10, agreed and acted
intentionally to open a case against Plaintifs
newborn trying to take cusody on false allegation
of abuse by CPS trying to terminate Mr. Thomas
and Ms. Shough parental rights of both of their
children. This was a violation of due process and
abuse of civil process.

99. The above conspiracies are the proximate cause of
mental anguish, emotional distress, and legal
expenses for Plaintiffs.

100. If the Plaintiffs prevail, they are entitled to an
award of attorneys' fees and costs pursuant to 42
U.S.C. § 1988.

## Count # 9- Violation of State Constitution

101. Plaintiffs incorporate by reference paragraphs 23-95 as though fully set forth at length herein.

102. By their actions described above, Defendants TDFPS, CPS, Chapmond, Coleman-Alford, Collins, Jane Doe 1-10, Martin, Tarrant County, Haines, Shannon, and the Tarrant County District Attorney's violated Sections 9 and 19 of the Texas Constitution.

### JURY REQUESTED

103. A jury trial is requested on all issues.

### Damages

104. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered the following injuries and damages:

   a.   Damage to reputation in the past and the future.

   b.   Lost earnings.

   c.   Mental anguish in the past and in the future.

   d.   Physical pain and emotional distress.

   e.   Exemplary damages.

   f.   Costs and fees related to litigation by State of Texas to terminate Plaintiffs parental rights.

**Attorney's Fees**

105. Pursuant to 42 U.S.C. § 1988, Plaintiffs are
     entitled to reasonable and necessary attorney's fees
     for the preparation and trial of this case and
     various stages of appeal, if any, including
     additional attorney's fees in the event it is
     necessary to pursue the collection of any judgments.

**Prayer for Relief**

106. For these reasons, plaintiffs ask for judgment
     against Defendant for the following:

a. Actual damages.

b. Exemplary damages.

c. Reasonable and necessary attorney's fees.

d. Prejudgment and Post judgment interest.

e. Costs of suit.

f. Costs of defending appeal.

g. Such other and further relief that this Court may deem
   appropriate and just.

107. Plaintiffs further ask the Court for the following relief against the Texas Department of Family and Protective Services, Tarrant County, Tarrant County District Attorney's Office and Safe Haven Mission, in addition to the requested relief hereinafter against said Defendants:

a. A declaratory judgment that the policies, practices, and acts complained of herein are illegal and unconstitutional.

b. A permanent injunction enjoining said Defendants from engaging in the practice complained of.

c. Such other relief and further relief that this court may deem appropriate and just.

Respectfully Submitted,

LORENZO THOMAS
PRO SE PLAINTIFF
5108 MANSFIELD HWY
FOREST HILL, TX 76119

HEATHER SHOUGH
903 N. BOWMANSPRINGS RD.
KENNEDALE, TEXAS 76060
PRO SE PLAINTIFF



7009 3410 0001 1081 9787

M° LORENZO THOMAS
'03 N. Cedar springs
ennedale, Texas 76060

RETURN RECEIPT
REQUESTED

FIRST CLASS



RECEIVED

MAR 3 2010

CLERK U.S DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

4-10 CV-193-Y

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
Attention: District Clerk
501 W. 10th Street
Room 310
    __rth, Texas 76102 - 3__